**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**FRANCINE SCHNUPP,**

        **Plaintiff,**

**V.**                       **Case No: 2:12-CV-226-FtM-29DNF**

**COMMISSIONER OF SOCIAL**
**SECURITY[1],**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION[2]

## TO THE UNITED STATES DISTRICT COURT

    This matter comes before the Court on Plaintiff, Francine Schnupp's ("Plaintiff"), Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance and supplemental security income (Doc. # 1) filed on April 23, 2012. The Plaintiff filed her Memorandum in Opposition to the Commissioner's Decision (Doc. # 20) on November 13, 2012. The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. # 22) on January 14, 2013.

---

[1]   Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405(g).

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

Plaintiff filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on February 4, 2008.  (Tr. 19). The Agency initially denied the claim on May 5, 2008, and again upon reconsideration on November 18, 2008. (Tr. 19).   Thereafter, Plaintiff filed a written request for a hearing on January 15, 2009. (Tr. 19). On July, 14, 2010, a video hearing was held before administrative law judge ("ALJ") Rossana L. D'Alessio.  After the hearing, the ALJ, in an August 11, 2010, decision, found Plaintiff not disabled.  (Tr. 19-29). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 6, 2012.  (Tr. 8-13).  The Commissioner's "final decision" is subject to judicial review.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

### *Plaintiff's History*

Plaintiff was born on September 15, 1960. (Tr. 158). She was 47 years old when she filed her applications for benefits and was 49 years old when the ALJ rendered her decision in this case. Plaintiff has a high school diploma. (Tr. 39). Plaintiff has worked primarily as a server-attendant, door repairer, house cleaner, and laundry worker. (Tr. 51, 170, 184). Plaintiff meets the insured status requirements of the Social Security Act ("SSA") through September 30, 2013. (Tr. 21). Plaintiff alleges disability beginning on September 1, 2007, due to pain radiating down

2

her right leg, pain in both knees, and pain in both feet. (Tr. 183). She also lists depression and glaucoma. (Tr. 183).

*Medical History*

On January 25, 2007, Plaintiff consulted Aldith Lewis, D.O. and requested a change in her medication. (Tr. 387). During the visit, Dr. Lewis found Plaintiff had no symptoms. (Tr. 387). Dr. Lewis thought Plaintiff appeared healthy and in no acute distress. (Tr. 388). In her overall assessment, Dr. Lewis noted that Plaintiff exhibited hyperlipidemia, obesity, depression, hyperglycemia, generalized weakness, and hematuria. (Tr. 388). On November 6, 2007, Nancy Buthman, ARNP, noted that Plaintiff exhibited emotional fluctuations. (Tr. 370). Specifically, Buthman reported that Plaintiff "[g]ets very angry, which is not at all like her." (Tr. 370). Then, on December 28, 2007, Alice Wofsy, M.D. noted Plaintiff had a present history of anxiety and depression, which Dr. Wofsy described as "a chronic condition." (Tr. 367). At the end of the visit, Dr. Wofsy prescribed Plaintiff Celexa and advised her to visit Ruth Cooper for an evaluation. (Tr. 368).

On April 10, 2008, Thomas Renny, D.O. conducted a physical residual functional capacity assessment on Plaintiff. (Tr. 405-12). Dr. Renny's assessment results indicated that Plaintiff could frequently carry twenty-five (25) pounds, occasionally carry fifty (50) pounds, stand/walk and sit for six (6) hours in an eight-hour workday. (Tr. 406). Moreover, Dr. Renny noted that Plaintiff had not established any communicative limitations. (Tr. 409).

Later that April, J.L. Bernard, J.D. Ph.D. performed a psychological examination on Plaintiff. (Tr. 415). Dr. Bernard's psychological examination indicated that Plaintiff's thought process was logical, clear, and rational. (Tr. 415). Moreover, Dr. Bernard thought that Plaintiff

3

exhibited average judgment and insight. (Tr. 416). Dr. Bernard did note that Plaintiff appeared irritable and depressed, but overall he found her mood stable and appropriate. (Tr. 416). Furthermore, Plaintiff's mini-mental status exam contraindicated any cognitive dysfunction. (Tr. 416). At one point during the examination Dr. Bernard observed that Plaintiff walked slowly and appeared "in a good bit of pain." (Tr. 415).

On May 2, 2008, Plaintiff presented at the emergency room with low back pain. (Tr. 317). Plaintiff was diagnosed with mechanical low back pain and hematuria. (Tr. 316). Three days later on May 5, 2008, Plaintiff underwent a psychiatric review by Arthur Hamlin, Psy.D., and the state agency medical examiner. (Tr. 418-31). After reviewing Plaintiff's medical records, Dr. Hamlin opined that Plaintiff's impairments were not severe. (Tr. 418). When examining the limitation Plaintiff's impairments placed on her functional activity, Dr. Hamlin found only a mild limitation on Plaintiff's social functioning. Otherwise, Dr. Hamlin found Plaintiff had no limitations in the following areas: (1) restriction on activities of daily living; (2) difficulties in maintaining concentration, persistence, or pace; and (3) episodes of decompensation, each of extended duration. (Tr. 428).

On November 11, 2008,  Plaintiff visited Martha Putney, Ph.D., another state examiner. (Tr. 442).  Dr. Putney provided an opinion nearly identical to Dr. Hamlin's. (Tr. 442, 452, 454). Dr. Putney found that Plaintiff did not have a severe impairment.  (Tr. 442).  Additionally, Dr. Putney found that Plaintiff's impairments had only a mild limitation on her ability to maintain social functioning. (Tr. 452). With regard to other areas of "functional limitation," Dr. Putney found no degree of limitation. (Tr. 452).   Indeed, Dr. Putney noted that although Plaintiff

4

experienced some mild decrease in social function, she was still able to get along adequately with the public, coworkers, and authorities. (Tr. 454).

On December 7, 2009, Plaintiff visited psychiatrist Gregory Young, M.D.  (Tr. 494). Dr. Young noted that Plaintiff spoke fast. In fact, Plaintiff spoke so fast that neither he nor Plaintiff could understand what she had said. (Tr. 494).  Dr. Young's Mental Status Examination revealed that he thought Plaintiff appeared distressed and was irritable-both conditions consistent with depression. (Tr. 494-495). Approximately two months later, Dr. Young saw Plaintiff for bipolar disorder. (Tr. 535-36).   During this visit, Dr. Young noted that Plaintiff's Global Assessment Functioning score was 50. (Tr. 535-36).

Nevertheless, throughout Plaintiff's visits, Dr. Young frequently found Plaintiff was oriented to time, place, and person, her memory was good, her intellectual functioning was average, her effect was appropriate, and her insight and judgment were fair. (Tr.  494, 506, 522, 535, 537).  Moreover, Dr. Young's Mental Status Examination revealed that prior to March 25, 2010, Plaintiff had not experienced any delusions, hallucinations, suicidal ideation, or auditory hallucinations. (Tr. 494, 506). On March 25, 2010, Plaintiff began complaining of hallucinations and paranoid ideation. (Tr. 522). Yet Dr. Young's notes from this same day indicate that Plaintiff was less depressed and that trazodone helped her sleep. (Tr. 522).  Plaintiff continued to be less depressed when she visited Dr. Young on May 4, 2010. (Tr. 535). Notes from that same day also reveal that although Plaintiff remained suspicious of others, she no longer experienced visual hallucinations. (Tr. 535).

5

Plaintiff's complaints of paranoia continued and were noted by Maria Fiorentino, M.D. when Plaintiff visited her on June 2, 2010. (Tr. 285). Dr. Fiorentino also noted that Plaintiff experienced anxiety attacks during the day. (Tr. 285). The mental status exam Dr. Fiorentino performed indicated that Plaintiff had a goal directed thought process and behaved normally. (Tr. 285). Moreover, the exam indicated that Plaintiff was anxious but not depressed. (Tr. 285). Based on this exam Dr. Fiorentino diagnosed Plaintiff with bipolar disorder, hypertension, back pain, and foot tendinitis. (Tr. 285-6).

In her appeal, Plaintiff submitted several additional pieces of medical evidence to the Appeals Council. First, Plaintiff submitted an MRI of Plaintiff's lumbar taken on September 22, 2011. (Tr. 551). The MRI revealed intervertebral disc desiccation at L3-4, L4-5, and L5-S1 with loss of intervertebral height at L4-5 and L5-S1. (Tr. 551). Specifically, at L3-4, the MRI showed a broad left neural foraminal disc protrusion causing mild left neural foraminal stenosis. (Tr. 551). At L4-5, the MRI revealed a circumferential disc bulge eccentric to the left with mild bilateral neural foraminal narrowing and bilateral facet arthropathy. (Tr. 551). However, no spinal canal stenosis existed. (Tr. 551). Finally, at L5-S1, the MRI revealed bilateral facet arthropathy and a minimal disc bulge. (Tr. 551). However, no significant spinal canal or neural forminal stenosis existed. (Tr. 551).

Additionally, Plaintiff submitted the medical opinion of Denise C. Thurling, M.D.  Dr. Thurling reviewed Plaintiff's September 22, 2011, MRI and concluded that "[at] L3-L4 was disk (sic) protrusion causing mild left neuroforaminal stenosis…[At] L4-L5 [there was] circumferential disk (sic) bulge excentric to the left causing mild bilateral neuroforaminal

narrowing." (Tr. 552). Before Plaintiff left in a stable condition, Dr. Thurling diagnosed Plaintiff with acute lumbosacral strain, lumbar radiculopathy, and chronic low back pain. (Tr. 553).

Finally, Plaintiff submitted evidence from the Lee County Center for Rehabilitation and Wellness ("Center"). (Tr. 599). The report indicated that Plaintiff had chronic myofascial low back pain with neuroforaminal disc protrusion at L3-4 and a disc bulge at L4-5. (Tr. 603). In the plan for future treatment, the Center noted that Plaintiff was unwilling to proceed with an epidural steroid injection and could not tolerate oral steroids. (Tr. 603). Additionally, the Center noted that it urged Plaintiff to follow-up with her mental care provider regarding her anxiety because it was limiting her treatment. (Tr. 603).

### *Administrative Law Judge's Decision*

The ALJ issued her decision on August 11, 2010. (Tr. 19-29). The ALJ found that Plaintiff "had not been under a disability, as defined in the Social Security Act from September 1, 2007…." (Tr. 29). In reaching this decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 20, 2013, and had not engaged in substantial gainful activity since September 1, 2007, the alleged onset of disability date. (Tr. 21). The ALJ found that Plaintiff had two severe impairments: lumbosacral strain and obesity. (Tr. 22). However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). As support, the ALJ noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (Tr. 25).

The ALJ proceeded to find that Plaintiff had a functional capacity (RFC) for medium work. (Tr. 25). The ALJ also found that Plaintiff "can never climb ladders, ropes, or scaffolds." (Tr. 25). The ALJ then found that Plaintiff could return to her past relevant work as a "house cleaner," "server-attendant nursing home," and "laundry worker- dry cleaners" because "[t]his work does not require the performance of work related activities precluded by [Plaintiff's] residual functioning capacity.  (Tr. 29).

In reaching this conclusion, the ALJ relied on VE testimony that classified Plaintiff's work as a: (1) house cleaner requires medium exertion and is unskilled, (2) "server-attendant nursing home" is unskilled and requires light exertion, and (3) "laundry worker- dry cleaner" requires medium exertion and is unskilled. (Tr. 29 (*citing* Dictionary of Occupational Titles, Volumes I and II, Fourth Edition, Revised 1991, §§381.687-018, 311.677-010, and 361.684.014)). Then, the ALJ compared Plaintiff's residual functioning capacity with the physical and mental demands of Plaintiff's past relevant work. (Tr. 29). After this comparison, the ALJ found that because Plaintiff's relevant work does not require climbing ladders, ropes, or scaffolds, she could perform her past relevant work "as they are actually and generally performed" (Tr. 29).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow

8

the sequential inquiry described in the regulation.[3] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

---

[3] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (*per curiam*).

9

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

In this case, the Plaintiff asserts that the ALJ committed the following errors for which remand is required: (1) the ALJ failed to assess the Plaintiff's anxiety, depression, and bipolar disorder as a severe mental impairment; (2) the ALJ improperly weighed medical and opinion

evidence; (3) the Appeals Council denied the Plaintiff's request for review of new and material evidence; (4) the ALJ improperly found that the Plaintiff's past work experience was substantial gainful activity.

## 1. *Whether the ALJ properly evaluated the Plaintiff's sever impairments*

The Plaintiff argues that the ALJ erred by failing to find that the Plaintiff's bipolar disorder, depression, and anxiety were severe impairments. The Plaintiff further asserts that because the ALJ did not evaluate the severity of her impairments accurately, there was an improper assessment of the Plaintiff's residual functional capacity. The Commissioner maintains that the ALJ considered Plaintiff's mental disorders and properly found that they were not severe as defined by the regulations. The Commissioner also alleges that even if the Plaintiff's mental disorders were severe, any error in this determination would be harmless because the ALJ found in Plaintiff's favor at step two and continued with the remaining steps in the sequential evaluation process.

When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. Phillips v Barnhart, 357 F.3d at 1237 (citing C.F.R. § 404.1520(c)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. App'x. 243, 246 (11th Cir. 2005). "An impairment or combination of impairments is not severe if it 'does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities,' including: '(1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;' (2) '[c]apacities for seeing, hearing, and speaking;' (3) '[u]nderstanding, carrying

11

out, and remembering simple instructions;' (4) '[u]se of judgment;' (5) '[r]esponding appropriately to supervision, co-workers and usual work situations;' and (6) '[d]ealing with changes in a routine work setting.'" Id. (citing 20 C.F.R. § 404.1521(a),(b)). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity. Gibbs, 156 Fed. App'x. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

After considering all of the evidence, including the Plaintiff's own testimony at the July 14, 2010 hearing, the ALJ determined that the Plaintiff had two severe impairments: lumbosacral strain and obesity. (Tr. 22). The ALJ found that Plaintiff's medically determinable mental impairments were not severe and caused only "mild" limitations. (Tr. 24).

In an effort to show that her mental impairments are severe, the Plaintiff primarily relies on evidence from Dr. Young, her treating psychiatrist. Dr. Young's treatment notes indicate that Plaintiff was oriented to time, place, and person, her memory was good, her insight and judgment were fair, her intellectual functioning appeared average, and her affect was appropriate. (Tr. 494, 506, 522, 535, 537). Dr. Young also found that Plaintiff was depressed and irritable. (Tr. 494, 506, 522, 535, 537). He noted in March and May 2010, that Plaintiff suffers from paranoid ideations and is suspicious of everyone. (Tr. 522, 535). However, for reasons discussed below, the ALJ properly accorded little weight to Dr. Young's findings. (Tr. 24).

The ALJ found persuasive the assessments of Dr. Hamlin and Dr. Putney, the state agency mental health consultants. (Tr. 24). Dr. Hamlin reviewed Plaintiff's medical records and found that the Plaintiff had no limitations in the of activities of daily living, and maintaining concentration, persistence, or pace; no episodes of decompensation; and no more than "mild" limitations in the area of maintaining social function. (Tr. 428). Dr. Putney had essentially the same assessment of the Plaintiff's condition. (Tr. 442, 452, 454). Both Dr. Hamlin and Dr. Putney found that the Plaintiff's mental impairment was not severe. (Tr. 418, 430).

The Plaintiff asserts that because Dr. Hamlin and Dr. Putney did not take into account Dr. Young's treatment notes, the only medical evidence available to them at that time was a one-visit examination by Dr. Bernard. The Plaintiff argues that neither Dr. Hamlin nor Dr. Putney's assessments should be used to support the ALJ's findings. However, Dr. Hamlin and Dr. Putney's assessments were supported by the objective clinical findings in the record. State agency medical or psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation and the ALJ may rely on their opinions when they are supported by medical evidence in the record. Harrison v. Commissioner, 2011 WL 899364 * 6 (M.D. Fla. March 14, 2011) (citing 20 C.F.R. §§ 404.1527(f)(2)(I); 416.927(F)(2)(I)).   Therefore the ALJ's use of Dr. Hamlin and Dr. Putney's assessments was proper.

Likewise, the Plaintiff relies on evidence from psychiatrist, Dr. Fiorentino which was submitted to the Appeals Council but not before the ALJ. Dr. Fiorentino's report indicated that the Plaintiff's suffered from paranoid and racing thoughts, auditory hallucinations, and anxiety attacks. (Tr. 285-286). Similar to the other medical evidence in the record, Dr. Fiorentino's

13

assessment demonstrates that Plaintiff's speech and behavior were normal, she was alert and oriented, and her insight and judgment were good. (Tr. 285). In addition, Dr. Fiorentino's treatment notes suggest that her findings were based on the Plaintiff's own subjective complaints and not the result of objective clinical findings. Therefore, Dr. Fiorentino's assessment should be given little weight and Plaintiff's reliance on it is misplaced.

As set forth in the decision, the ALJ properly reviewed the evidence regarding Plaintiff's mental impairments. The ALJ's opinion provides a thorough evaluation of the Plaintiff's medical history. In addition to the assessments done by Dr. Young, Dr. Hamlin, and Dr. Putney, the ALJ evaluated the pharmacologic management progress note from Lee Mental Health Center on March 25, 2010, along with the consultative mental examination by Dr. Bernard on April 29, 2008. (Tr. 23). The ALJ also evaluated the Plaintiff's four broad functional areas known as the 'paragraph B' criteria and concluded that the Plaintiff's mental disorders did not cause more than "mild" limitations in activities of daily living, social functioning, and concentration, persistence or pace and that she had no episodes of decompensation. (Tr. 23-24).

The Plaintiff further argues that the ALJ failed to consider that Plaintiff had received a consistent Global Assessment Functioning ("GAF") score of 50 when she saw mental health professionals. Pl.'s Mem. at 13. The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings." Wind v. Barnhart, 133 Fed. App'x. 684, 692 n. 5 (11th Cir.2005) (citing 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000).) This district has held that, generally speaking and absent unusual circumstances, an ALJ's failure to discuss a claimant's GAF score is not reversible error. *See,*

14

*e.g.,* <u>Baily v. Astrue</u>, No. 3:09–cv383–J–JRK, 2010 WL 3220302 at *8–9 (M.D.Fla.Aug.13, 2010); <u>Bruner v. Commissioner of Social Sec.</u>, No. 8:08–cv–1744–T–27GJK, 2009 WL 3052291 at *2 (M.D.Fla.Sept.23, 2009); <u>Clarence Bros. v. Astrue</u>, No. 6:11–cv–830–ORL–MCR, 2012 WL 3243232, at *8 (M.D.Fla. Aug.8, 2012). As there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005), and substantial evidence otherwise supports the decision, any error in failing to evaluate the GAF score of 50 is harmless.

Finally, nothing requires that the ALJ must identify, at step two, every impairment that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that she has considered all of the claimant's impairments, whether severe or not, in combination. <u>Heatly v. Commissioner of Soc. Sec.</u>, 382 Fed. App'x. 823 (11th Cir. 2010). At step two, the ALJ found Plaintiff had severe impairments. Therefore, even if the Court determined that the record lacked substantial evidence supporting the ALJ's finding, any error is harmless because the ALJ found in Plaintiff's favor at step two and continued with the remaining steps in the evaluation process.

The ALJ only made her determination that the Plaintiff's mental impairments are not severe after thoroughly reviewing the Plaintiff's medical history. The Court finds that the ALJ applied the correct legal standards in this case and that the ALJ's finding that the Plaintiff did not have severe mental impairments is supported by substantial evidence in the record. Thus, the ALJ did not err in concluding that the Plaintiff's mental impairments were not severe.

### 2.  *Whether the ALJ properly evaluated the medical evidence in the record*

The Plaintiff next asserts that the ALJ erred in failing to give appropriate weight to Dr. Young's assessment, which showed that she suffered from mental limitations which significantly

interfered with her ability to work. The Plaintiff contends that because Dr. Young is the Plaintiff's treating physician, his opinion should be afforded great weight in the overall disability analysis. The Plaintiff argues the ALJ incorrectly concluded that Dr. Young's assessment was based solely on the Plaintiff's subjective symptoms.

In determining whether an individual is disabled, "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1159 (11th Cir.2004) (quotation omitted). Moreover, the ALJ commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause, Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir.1986), or if he fails to articulate clearly his reason for according this evidence less weight, MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

Nevertheless, good cause to discredit a treating physician's opinion on disability or inability to work exists where the doctor's opinion is not supported by the evidence, is inconsistent with the physician's own medical records, or merely is conclusory. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997). "[C]hoosing between conflicting evidence is a task particularly suited to the fact finder." Landry v. Heckler, 782 F.2d 1551, 1554 (11th Cir.1986). Indeed, "[t]he commissioner may reject the opinion of any physician when the evidence supports a contrary conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir.1983).

In this case, the ALJ clearly and properly articulated the reason for assessing little weight to the opinion of Dr. Young. The ALJ's decision states that little weight was given to Dr. Young's opinion because it was based on the Plaintiff's subjective complaints and was not

16

consistent with the record as a whole. (Tr. 24). A medically determinable impairment must be established by medically acceptable clinical and laboratory diagnostic techniques and not solely on the basis of a Plaintiff's allegations regarding symptoms. 20 C.F.R. §§ 404.1508, 404.1529, and 416.929 and Social Security Ruling 96-4p.

Plaintiff asserts the record is "replete with evidence consistent with Dr. Young's opinions." Pl.'s Mem. at 16. The Plaintiff claims that Dr. Lewis and Dr. Wofsy's assessments in 2007, which state that Plaintiff was depressed, and had anxiety and insomnia, support Dr. Young's findings. Pl.'s Mem. at 16. However, Plaintiff overstates the findings of Dr. Lewis and Dr. Wofsy. The notations regarding anxiety, insomnia, and categorizing depression as a "chronic condition" are located in the "History of Present Illness" section of the treatment note and are thus indicative that those statements reflect Plaintiff's subjective complaints and are not a finding upon examination. (Tr. 367). While there is a consistent diagnosis of depression by Dr. Lewis and Dr. Wofsy, these opinions omit any discussion of the severity of the depression or the nature or permanence of the condition. In fact, the assessments by Dr. Lewis, are inconsistent with a finding of severe or chronic depression because the treatment notes state that Plaintiff was in no acute distress and her appearance was well developed, well nourished, healthy. (Tr. 376, 379, 382, 385, 388, 390, 392).

The Plaintiff once again refers to her GAF score of 50 as support for Dr. Young's assessment. Pl.'s Mem. at 17. As discussed above, the Commissioner has declined to endorse the GAF scale for use in determining disability and the Plaintiff has failed to show why a GAF sore of 50 corroborates Dr. Young's opinion. *See supra* at 14-15.

The record shows that Dr. Young's assessment was inconsistent with the Plaintiff's own testimony. Dr. Young opined that Plaintiff suffered from marked limitations in her ability to maintain concentration, persistence, and pace, yet Plaintiff stated that she watched television for three to four hours a day, read for approximately two hours a day, and could drive and shop for two hours at a time (Tr. 196-97). Similarly, Dr. Young's opinion that Plaintiff has limitations in social functioning is inconsistent with the Plaintiff's indication that she talks to her mother on the phone twice a week, has discussions with her neighbors, and visits with her boyfriend and his children once a week at their house. (Tr. 197). Moreover, Dr. Young determined that Plaintiff suffered from marked restrictions in her activities of daily living; however the Plaintiff indicated that she can shop, clean her home, drive, take care of her animals, and handle her own money on a daily basis. (Tr. 193-97). Therefore, there is substantial evidence to support the ALJ's determination the Dr. Young's assessment was inconsistent with the record as a whole and therefore accorded little weight.

In contrast, the psychiatric review technique assessments by Dr. Hamlin and Dr. Putney are consistent with the Plaintiff's testimony and other objective clinical findings in the record. (Tr. 24). Both Dr. Hamlin and Dr. Putney note that their opinions are based in part on the examination done by Dr. Bernard. (Tr. 430, 454). In their assessments, Dr. Hamlin and Dr. Putney found that the Plaintiff had no mental abnormalities, no problems understanding, concentrating, talking or answering. (Tr. 430, 454). Dr. Putney additionally noted that Plaintiff could get along adequately with the public, coworkers, and authorities and was cooperative and appropriate which is consistent with the fact that she was working at the time she submitted her application form. (Tr. 454). Dr. Putney and Dr. Hamlin also found Plaintiff was able to drive,

18

shop, prepare meals, do house hold chores, manages funds, visits with others, and follows instructions which is consistent with the Plaintiff's testimony. (Tr. 193-97, 430, 454). While the performance of everyday tasks cannot be used to make a determination the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physician's testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis). Both doctors also noted that Plaintiff had received no psychiatric treatment at the time of the assessments. (Tr. 430, 545). Therefore, ALJ properly found the State Agency opinions persuasive because they were supported by the overall evidence of record. (Tr. 24).

The Court finds that there is substantial evidence supporting the ALJ's finding that Dr. Young's assessment was based on the Plaintiff's subjective complaints and not supported by the record as a whole. The ALJ gave little weight to the opinions from Dr. Young and articulated good cause for such findings.

Next, the Plaintiff asserts that Dr. Young's statement that the Plaintiff's "depression is so pervasive that it is probable that she will not be able to resume employment and should be on disability" was improperly disregarded by the ALJ. (Tr. 507). The ALJ found that Dr. Young's determination that the Plaintiff "should be on disability" had little merit because the determination of disability for an individual's ability to work is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527 and 416.927 and SSR 96-5p. The Plaintiff asserts that the ALJ substituted her own "hunch or intuition for the diagnosis of a medical professional." Pl.'s Mem. at 13. However, Dr. Young was not diagnosing the Plaintiff with a medical condition but

19

rather was offering a legal conclusion on an issue reserved solely for the Commissioner. Thus, the ALJ determined that Dr. Young's opinion regarding the Plaintiff's inability to resume employment and that she should be put on disability was not a medical opinion within the meaning of the regulations (Tr. 24). Therefore, the ALJ applied the correct legal standard and had substantial evidence supporting her decision to disregard Dr. Young's statement regarding Plaintiff's entitlement to disability.

Finally, the ALJ stated that Dr. Young's assessment demonstrates that Plaintiff has a mental impairment that meets or equals a listing. The Plaintiff attempts to construe the ALJ's opinion arguing that "whether medical evidence demonstrates a listing is not the correct test for weight given to a treating physician's opinion." Pl.'s Mem. at 18. However, as is stated in the ALJ's opinion, the reason Dr. Young's opinion was accorded little weight was because it was inconsistent with the record as a whole and based on Plaintiff's subjective complaints. (Tr. 24). The ALJ simply noted "additionally" that Dr. Young's notes did not provide enough medical evidence to demonstrate a listing. (Tr. 24).

The ALJ outlined the reasons for making credibility determinations, giving weight to the two agency psychological consultant's assessments and finding Dr. Young's assessment as not credible. Therefore, the Court finds that the ALJ did not err when evaluating the medical evidence.

### 3.   *Whether the Appeals Council properly denied Plaintiff's request for review*

Plaintiff argues that the Appeals Council improperly denied Plaintiff's request for review when new and material evidence was available which could have changed the outcome of the case. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March

6, 2012, and then again on April 3, 2012, after reviewing the new medical evidence provided by Plaintiff. (Tr. 1-13). The Appeals Council noted that the new information did not provide a basis for changing the ALJ's decision. (Tr. 2, 9).

To justify a remand on new evidence not presented during the administrative process the claimant must show that there is good cause for her failure to offer the evidence at the administrative level, and that the new evidence would change the outcome. Cherry v. Heckler, 760 F.2d 1186, 1192 (11th Cir. 1987). Good cause exists where the evidence did not exist at the time of the administrative proceeding. Id. However, the new evidence must relate to the period on or before the date of the ALJ's decision. See Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir.1999); cf. 20 C.F.R. §§ 404.970(b), 416.1470(b) (requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review. See Wilson, 179 F.3d at 1279. Reviewing the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time necessarily requires that time period be prior to the date of the ALJ's decision. Id.

The new evidence Plaintiff submitted to the Appeals Council consists of: (1) an MRI of the cervical spine dated September 2011; (2) treatment notes from Lee Memorial Health System, dated December 2011; (3) treatment notes from Dr. Sills, her optometrist, from 2006 through 2010; (4) treatment notes from the Lee Center for Rehabilitation and Wellness from 2011 and 2012; and (5) treatment note from Dr. Lantheir, dated January 2012 (Tr. 551-614). With the

exception of the treatment notes from Dr. Sills, Plaintiff's optometrist, all of this evidence falls outside the relevant time period because it is from treatments received after the ALJ issued its decision on August 11, 2010.

The treatments records from Dr. Sills, Plaintiff's optometrists, show that the Plaintiff received treatment for glaucoma. (Tr. 555-97). The records are in response to the ALJ's decision which found that Plaintiff's glaucoma was not a medically determinable impairment due to the absence of medical records to substantiate the condition. (Tr. 23). The Plaintiff claims that this record alone is sufficient to provide a reasonable possibility of changed outcome in the case. Pl.'s Mem. at 22. However, the Plaintiff has failed to show that there is good cause for her failure to offer Dr. Sills treatment notes at the administrative level.

Therefore, the Court finds the Appeals Council properly considered the additional evidence submitted by Plaintiff and that the Appeals Council did not err by declining to review the Plaintiff's case.

### 4.   *Whether the ALJ properly evaluated Plaintiff's Past Relevant Work*

At Step Four, the ALJ determined that Plaintiff could return to past relevant work as a house cleaner, server – attendant nursing home, and laundry worker – dry cleaners. (Tr. 29). The Plaintiff argues that the ALJ's Step Four determination is unsupported by substantial evidence because Plaintiff's work as a server and laundry worker was not substantial gainful activity ("SGA"). The Plaintiff further argues that the ALJ misclassified Plaintiff's work as a house cleaner and that such classification was not done by a vocational expert ("VE").

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity ("RFC") and, based on that determination, decide whether the

22

plaintiff is able to return to his/her previous work.  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  If a claimant can perform any of her past relevant work as she performed it or as it is generally performed, she will be found not disabled. See id.  Past relevant work is work that was done within the past 15 years, that was substantial gainful activity, and that the claimant did long enough to learn how to perform the work. 20 C.F.R. §§ 416.960(b)(1); 416.965(a)(1). A claimant bears the burden of showing that her past work experience is not "past relevant work," see Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991), and bears the burden of proving that she cannot perform any past relevant work, see Jackson v. Bowen, 801 F.2d 1291, 1293-94 (11th Cir. 1986).

The ALJ found Plaintiff's past relevant work as a house cleaner is unskilled and requires medium exertion, as a server is unskilled and requires light exertion, and as a laundry worker is unskilled and requires medium exertion. (Tr. 29). The ALJ found that Plaintiff had the RFC to perform medium work and that Plaintiff "can never climb ladders, ropes, or scaffolds." (Tr. 25). After comparing the residual function capacity with the physical and mental demands of Plaintiff's past relevant work, the ALJ concluded that Plaintiff could perform her past relevant work as a house cleaner, server, and laundry worker as they are actually and generally performed. (Tr. 29).

First, Plaintiff asserts that Plaintiff's past work as a server and laundry worker was not SGA. The Plaintiff's argument is that her past work is not "relevant" because her monthly earnings were below the SGA threshold. See Pl.'s Mem. at 22-24. In evaluating work activity for SGA purposes, an ALJ's primary consideration is the earning derived from the work activity. 20 C.F.R. § 404.1574.

23

In regards to the server position, Plaintiff only addresses the retirement home position and fails to discuss her dietary aide position that the VE identified. Id.  Likewise, the Plaintiff only discusses her earnings in 2007 and 2008 and fails to consider her work in 1991-1996 and 1998, where the Plaintiff's income exceeded the presumptive SGA rate.  Id. Therefore, even if the Plaintiff's past relevant work as a server at Emeritus Corporation during 2007 and 2008 was below SGA, she has failed to allege how her work during 1991-1996 and 1998 or the dietary aide position did not meet SGA levels. Therefore, the ALJ properly determined that the Plaintiff's work as a server was past relevant work.

The Plaintiff further argues that because the record before the ALJ contained no earning reports, the ALJ did not have a factual basis for concluding that her position as a laundry worker was SGA. However, the record shows that Plaintiff worked as a Laundry aide from 1998 -2000, 8 hours per day, 5 days a week, and earning $7.00 an hour. (Tr. 184). Therefore, based on the information in the record, the Plaintiff earned $1,120 a month as a laundry aide from 1998 -2000 which exceeds the SGA rate for those years. See 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2), Table 1.

The Plaintiff, attempts to bolster this argument by providing her earnings records on appeal. Pl.'s Mem. at 23. However, as discussed above, to justify remand on this new evidence the Plaintiff must show good cause for her failure to offer the evidence at the administrative level and show that the new evidence would change the outcome of the case. Cherry v. Heckler, 760 F.2d at 1192.  The Plaintiff's earnings records were available at the time of the ALJ hearing and the Plaintiff has failed to show good cause for failing to provide the ALJ with this evidence at the time of the proceeding. Furthermore, the ALJ properly found that Plaintiff is able to return to her

24

past relevant work in two other fields, therefore Plaintiff has failed to allege how this information would alter the outcome of her case. Therefore, the Court finds that the ALJ had substantial evidence to support finding Plaintiff's work as a server and laundry worker and even if not, the error is harmless because there were other jobs included in the ALJ's opinion constituting Plaintiff's past relevant work.

Second, Plaintiff asserts that the ALJ improperly classified her past relevant work as a house cleaner. The Plaintiff inaccurately states that the house cleaning work was classified by the ALJ instead of the vocational expert. (VE). Pl.'s Mem. at 24. The record shows that the ALJ specifically inquired about Plaintiff's past relevant work and the VE responded stating Plaintiff worked in "housekeeping and cleaning." (Tr. 51).

The Plaintiff also asserts that the Plaintiff's past relevant work as house cleaner was incorrectly classified and according to the Dictionary of Occupational Titles ("DOT") it should have been classified as Industrial Cleaner. Pl.'s Mem. at 23. Plaintiff then argues that the DOT's job description does not describe what Plaintiff did as a housekeeper. The Eleventh Circuit has held that when the VE's testimony conflicts with the DOT, the VE's testimony trumps the DOT. Miller v Comm'r, 2007 WL 2461771 (11th Cir. August 31, 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999)).  The VE's testimony controls because the VE's task is to determine whether there are jobs in the region which the claimant can perform with his precise disabilities or limitations.  Id.  Further, the Court of Appeals noted that the DOT states it is not a comprehensive source of information and that it should be supplemented with local job information.  Lipson v. Barnhart, 347 F.Supp. 2d 1182, 1189 (M.D. Ala. 2004).  The VE provides this vital [supplemental] information.  Id. at 1189.  Therefore, an ALJ may rely on the

25

VE's testimony even if it is inconsistent with the DOT. <u>Jones</u>, 190 F.3d at 1229. There is no evidence in the record to suggest that the ALJ improperly accepted the VE's testimony. Therefore, the Court finds the VE's classification of Plaintiff's past work as house cleaner was proper.

As discussed *supra*, Plaintiff has failed to meet her burden of showing she cannot perform her past relevant work as she actually performed it, and thus, the ALJ's decision finding Plaintiff not disabled should be affirmed. *See* 20 C.F.R. § 416.920(f); <u>Macia v. Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987).

## <u>CONCLUSION</u>

Accordingly the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. It is respectfully recommended that the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 21st Day of August, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record